Date signed August 30, 2011



PAUL MANNES
U. S. BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| EMILIANO MARRA | : | Case No. 10-21783PM |
| | : | Chapter 7 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| FARID SROUR | : | |
| BARBARA PANTOS | : | |
| Plaintiffs | : | |
| vs. | : | Adversary No. 10-0882PM |
| | : | |
| EMILIANO MARRA | : | |
| Defendant | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

## MEMORANDUM OF DECISION

In this adversary proceeding Plaintiffs seek a ruling that the judgment in the amount of $110,349.50 entered in their favor against the Defendant on September 1, 2009, by the Circuit Court for Montgomery County, Maryland, in Case No. 305250-V, is excepted from discharge pursuant to § 523(a)(2)(A) of the Bankruptcy Code, Title 11 United States Code.[1]  The Plaintiffs

---

[1]    **11 U.S.C. § 523.  Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
\*            \*            \*            \*            \*
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
(A) false pretenses, a false representation, or actual fraud,

have the burden of proving the elements of nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-287 (1991). Exceptions to discharge are strictly construed against creditors in order to protect the debtor's fresh start. *Spinoso v. Heilman*, 241 B.R. 137, 148 (BC Md. 1999).

At the trial of the case, the court heard the testimony of the parties and that of Defendant's brother Francesco and received into evidence the exhibits offered by both sides. At the conclusion of the trial, the court invited the parties to file memoranda in support of their positions, and both parties chose to do so.

The parties filed the following stipulation of agreed facts:

1) Plaintiff Farid Srour has been a real estate broker for over 50 years.

2) Plaintiff Farid Srour has been a real estate developer/investor for about 40 years.

3) Plaintiff Barbara Pantos has been a real estate agent for about 10 years.

4) Defendant Emiliano Marra is part-owner of a wholesale food company, Euro Gourmet, Inc.

5) Plaintiffs loaned Defendant the sum of $100,000 on or about April 6, 2006. (See Plaintiffs' Exhibit 2)

6) Defendant used the loan money as a deposit for the purchase of a house at 8205 Hamilton Spring Court, Bethesda, Maryland (the "Bethesda Property").

7) Plaintiffs were the real estate/brokers/agents for Defendant for his purchase of the Bethesda Property.

8) Defendant went to settlement on the Bethesda Property on May 5, 2006.

9) Plaintiff Pantos was present with Defendant at the closing/settlement on the Bethesda Property.

10) At the time of settlement, Defendant lived at 11328 King George Drive, Silver    Spring, Maryland (the "Silver Spring Property").

11) On December 3, 2008, Plaintiffs filed a complaint against the Defendant for

---

other than a statement respecting the debtor's or an insider's financial condition.

>    breach of contract in Montgomery County Circuit Court (Case No. 305250V).

> 12) On September 1, 2009, Plaintiffs obtained a consent judgment against the Defendant in the total sum of $100,349.50.

> 13) Defendant filed a voluntary petition for bankruptcy on May 25, 2010.

On or about April 6, 2006,[2] the parties entered into an "Agreement For Bridge Loan Financing and Brokerage" (the "Agreement") that Plaintiff Barbara Pantos created without legal help based upon similar documents used in her real estate business dealings. Had she employed a lawyer to memorialize the $100,000.00 loan, she would have spared herself no end of aggravation. The document was poorly conceived, poorly drafted, and exposed Plaintiffs to the peril of these proceedings. The fact that the Agreement was drafted by Plaintiffs means that any vagueness and ambiguities must be resolved against them. *See, Truck Ins. Exchange v. Marks Rentals, Inc.*, 418 A.2d 1187, 1191 (Md. 1985).

Having observed throughout the trial the demeanor of the witnesses, the court finds that where there are disputes of fact, the court believes the testimony of the Plaintiffs and finds the testimony of the Defendant and his brother unworthy of belief. In particular, the court finds that at the time the Plaintiffs made the $100,000.00 loan to Defendant in order to enable him to purchase the home at 8205 Hamilton Spring Court, Bethesda, Maryland (the "Bethesda Property"), it was done so out of motivations of friendship and a sincere desire to help him acquire a house in a safe neighborhood that was close by his brother so that cousins could play together. It is undisputed that the parties had a significant personal relationship predating the loan. This relationship was evident from the fact that Plaintiffs attended numerous Marra family functions, such as a wedding, baby showers, family dinners and the like. The court expressly rejects the Defendant's contention that there was a profit motivation for the loan. All that Plaintiffs received upon the closing of the sale was a commission of less than $20,000.00, together with the possibility of earning a smaller commission upon the sale of Debtor's previous home. The Defendant, on the other hand, considered the loan purely as a business transaction.

---

[2] There is considerable dispute over the exact date of the Agreement, with the parties even introducing into evidence different versions of the agreement, but these differences are irrelevant to the court's conclusions.

3

The court finds that at the time of his acquisition of the Bethesda Property, the Defendant was engaged in the common practice of "flipping" real estate properties for a quick profit, and that his financial problems, like those of so many other underfinanced, over-leveraged speculators, arose when the real estate market bubble burst.

Plaintiffs' case is based on alleged false pretenses, false representations and actual fraud. 11 U.S.C. §523(a)(2)(A).  This depends upon the intent of the Defendant <u>at the time of the transaction</u> to deceive or defraud, *In re Koep*, 334 B.R. 365 (BC Md. 2005), and "justifiable reliance" on the part of the Plaintiffs, *Field v. Mans*, 516 U.S. 59, 74-76 (1995).  The prerequisites for a cause of action for fraud in Maryland are:

> (1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.  Everett v. Baltimore Gas & Elec., 307 Md. 286, 300, 513 A.2d 882, 889 (1986); Martens Chevrolet v. Seney, 292 Md. 328, 333-334, 439 A.2d 534, 537-538 (1982); James v. Weisheit, 279 Md. 41, 44-45, 367 A.2d 482, 484-485 (1977); Suburban Mgmt. v. Johnson, 236 Md. 455, 460, 204 A.2d 326, 329 (1964); Schmidt v. Millhauser, 212 Md. 585, 592-593, 130 A.2d 572, 575-576 (1957); Appel v. Hupfield, 198 Md. 374, 378-379, 84 A.2d 94, 95-96 (1951);  Gittings v. Von Dorn, 136 Md. 10, 15-16, 109 A. 553, 554-555 (1920); Donnelly v. Baltimore Trust Co., 102 Md. 1, 13, 61 A. 301, 306 (1905); Boulden v. Stilwell, 100 Md. 543, 552, 60 A. 609, 610 (1905); Cahill v. Applegarth, 98 Md. 493, 499-504, 56 A. 794, 795-797 (1904); Robinson v. Parks, 76 Md. 118, 131-133, 24 A. 411, 412-413 (1892); McAleer v. Horsey, 35 Md. 439, 452-454 (1872).

*Nails v. S & R*, 334 Md. 398, 415-416, 639 A.2d  660, 668-669 (1994).  *See also, Ellerin v. Fairfax Savings*, 337 Md. 216, 229-230, 652 A.2d 1117, 1123 (1995).  *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 665 A2d 1038, 1047-1048 (Md. 1995).

Defendant asserts that his conduct can only be described as breach of contract and not as fraud because his contractual undertakings involved promises of future performance on his part.

It is true that failure to fulfill promises does not necessarily amount to fraudulent conduct. This proposition is stated in such cases as *Appel v. Hupfield*, 198 Md. 374, 379, 84 A.2d 94, 96 (1951), where Judge Delaplaine, citing *Boulden v. Stilwell*, 100 Md. 543, 552, 60 A.2d 609, 612 (1905), stated the general rule that,

> Ordinarily fraud cannot be predicated on statements which are promissory in their nature, and therefore an action for deceit will not lie for the unfulfillment of promises or the failure of future events to materialize as predicted. Failure to fill a promise is merely a breach of contract, which must be enforced, if at all, by an action *ex contractu*.

*See also, Delmarva Drill Co. v. Tuckahoe*, 268 Md. 417, 427, 302 A.2d 37, 41 (1973); *Levin v. Singer*, 227 Md. 47, 63, 175 A.2d 423, 432 (1961). But as explained in *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, *supra* at 340 Md. at 197, 665 A.2d at 1048, there is an exception to this rule. Plaintiffs' case depends upon this exception.

> In *Alleco*, the Court of Appeals instructs:
>
> This Court has held that the defendant's deliberate misrepresentation of his existing intentions, where the misrepresentation was material to the transaction giving rise to the alleged fraud, may form the basis for an action in fraud or deceit. *See Appel v. Hupfield, supra*, 198 Md. at 382, 84 A.2d at 97; *Brager v. Friedenwald*, 128 Md. 8, 33, 97 A. 515, 524 (1916); *Price v. Read*, 2 H & G 291, 294-295 (1828); *Adams v. Anderson*, 4 H & J 558, 559-560 (1819). *See also Gross v. Sussex,* 332 Md. 247, 258, 630 A.2d 1156 (1993) ("making a promise as to a matter material to the bargain with no intention to fulfill it is an actionable fraud"); *Levin v. Singer, supra,* 227 Md. at 63-64, 175 A.2d at 432; *Tufts v. Poore*, 219 Md. 1, 10-12, 147 A.2d 717, 722-723 (1959); *Ortel v. Realty Company*, 171 Md. 678, 683-684, 684, 190 A. 239, 241-242 (1937); *Councill v. Sun Ins. Office*, 146 Md. 137, 150-151, 126 A. 229, 234 (1924) ("a false promise, not intended to be performed, but made to trick and deceive another into the execution of a written instrument, is a fraud"); *Gale v. McCullough*, 118 Md. 287, 293, 84 A. 469, 471 (1912). The Court explained in *Tufts v. Poore, supra*, 219 Md. at 12, 147 A.2d at 723, as follows:
>
> "The gist of the fraud in such cases is ... the fraudulent intent of the promisor, the false representation of an existing intention to perform where such intent is in fact non-existent, and the deception of the promisee by such false promise." *Ibid*.

*See also*, *Matter of Allison*, 960 F.2d 481, 484 (CA5. 1992), where the Court observed:

> A debtor's misrepresentations of his intentions, however, may constitute a false representation within the meaning of the dischargeability provision if, when the representation is made, the debtor has no intention of performing as promised.

5

Plaintiffs' actual reliance upon Defendant's representations is undisputed.  Defendant urges that Plaintiffs threw caution to the winds and that their blind reliance on his promises cannot result in a finding of "justifiable reliance" on his representations.  However, justifiable reliance is a subjective standard that takes into account the relationship of the parties.  This relationship was a personal one that engendered a feeling of trust and concern.  In the circumstances, it was not incumbent upon the Plaintiffs to investigate this transaction as if they were dealing with strangers.  Nor was it necessary for them to conduct a title search of the Debtor's properties.  *Cf., Sanford Institution for Savings v. Gallo,* 156 F.3d 71, 75 (CA1 1998).

The court finds as a fact that at some point, contrary to his representations, Defendant determined not to repay the obligation to Plaintiffs, either from 70% of the net proceeds from the sale of his previous residence or from the proceeds of the refinancing of the Bethesda property, where the loan balance was increased from $779,000.00 to $1,200,000.00.  This refinancing was consummated shortly after the sale.  This finding is based upon the fact that shortly after settlement, the Debtor hired an architect who prepared plans for a massive addition to the property.  The funds obtained by the refinancing transactions were devoted to a massive upgrading program with no thought given to the repayment of the bridge loan.  While the construction work on the Bethesda Property was going on, there was no possibility of the sale of that residence, as promised.  The court finds further that the Bethesda Property did not require massive alterations and that the Debtor and his family could have moved in shortly after the settlement.  The sale of the 100% financed Florida property was an unlikely source of any substantial funds to pay the loan to the Plaintiffs.

The issue presented is, <u>when</u> did the Debtor form the intention not to follow through with his representations?  Timing is critical on the question of Marra's intent.  Here, the court finds as a fact that at some point the Defendant determined not to repay his obligation to Plaintiffs from either the net proceeds received from the sale of his home or from the funds received from the refinancing of the Bethesda Property that were used instead for its grandiose improvements.  But the court cannot find by a preponderance of the evidence that his scheme to ignore his obligations under the bridge loan agreement was formed before he entered into it.  That being the case, Plaintiffs lose.  As their counsel said at the beginning of the case, "no good deed goes unpunished."  Marra took advantage of Plaintiffs' friendship and treated them

shabbily, but he prevails nevertheless.

      An appropriate order will be entered.


cc:
Michael G. Campbell, Esq., 200B Monroe Street, Rockville, MD 20850
Edward Amourgis, Esq., 1700 Rockville Pike, Suite 400, Rockville, MD 20852


**End of Memorandum**